UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| SCOTT A. MURRAY, )<br>)<br>Plaintiff, )<br>)<br>v. )<br>)<br>E*TRADE FINANCIAL CORPORATION )<br>and E*TRADE BANK, )<br>)<br>Defendant. ) | No. 05 C 5433<br><br>Judge Ruben Castillo |

## MEMORANDUM OPINION AND ORDER

Plaintiff Scott A. Murray sued defendants E*Trade Financial Corporation and E*Trade Bank (collectively, "E*Trade") for accessing his consumer report in violation of the Fair Credit Reporting Act ("FCRA"), 15 U.S.C. § 1681 *et seq.* (2000). (R. 29, Am. Compl. ¶ 1.)[1] Murray now moves for class certification pursuant to Federal Rule of Civil Procedure 23. For the reasons set forth below, the Court grants Murray's motion for class certification.

### BACKGROUND

Murray alleges that in 2005 he received a document in the mail from E*Trade (hereinafter, "the mailer"). (*Id.* ¶¶ 7,16; R. 33, Answer ¶ 16.) The mailer stated, "You're pre-approved for a home equity rate starting at a low 1.99% intro APR for the first 90 days. And continuing after that with a variable rate as low as Prime (currently 5.75% APR)." (R. 29, Am. Compl., Ex. A. (footnote omitted).) A footnote after the words "You're preapproved" directed the reader to a disclosure stating that "[i]nformation from a consumer credit report was used in connection with this offer. You have received this offer because you satisfied the creditworthiness used to select offer recipients." (*Id.*) Based on the text of the mailer, Murray

---

[1] Murray filed the initial complaint on September 20, 2005, and the amended complaint on January 10, 2006. (R. 1, Compl.; R. 29, Am. Compl.)

alleges that E*Trade's use of his consumer report to send the mailer violated the FCRA because E*Trade did not have a permissible purpose for accessing his consumer report. (*Id.* ¶¶ 30, 32.) It is permissible under the FCRA to access a consumer report in order to extend a "firm offer of credit." 15 U.S.C. § 1681b(c)(1)(B)(i). However, Murray alleges that the mailer is not a "firm offer of credit" because it merely solicits business, which he asserts is not a permissible purpose for accessing a consumer report under the FCRA. (*Id.* ¶ 30.) Murray further alleges that the violation was willful. (*Id.* ¶ 33.)

On July 19, 2006, Judge Plunkett granted in part E*Trade's motion for judgment on the pleadings pursuant to Rule 12(c). The court found Murray had sufficiently alleged a willful violation of the FCRA and therefore denied E*Trade's motion to dismiss that claim. *Murray v. E*Trade Fin. Corp.*, No. 05 C 5433, 2006 U.S. Dist. LEXIS 53945, at *10 (N.D. Ill. July 19, 2006). The court also denied without prejudice E*Trade's motion to preclude injunctive relief, finding that the propriety of an injunction should be considered after the resolution of the merits of Murray's claim. *Id.* at *13-14. However, the court granted E*Trade's motion for judgment on the pleadings with regard to Murray's allegations that E*Trade violated the FCRA's disclosure requirements because no private right of action exists for such violations under 15 U.S.C. § 1681m(d). *Id.* at *11. The court struck Murray's allegations concerning this alleged violation from the complaint. *Id.*

The case was reassigned from Judge Plunkett to this Court by the Executive Committee on August 3, 2006. Murray moved for class certification on September 20, 2006. (R. 59, Mot. to Certify Class.) He requests that the Court certify the following class:

> (a) all persons with an address in Illinois (b) to whom [E*Trade] sent or caused to be sent material in the form represented in [the mailer] (c) on or after September 21, 2003 and before October 11, 2006 and

2

> (d) who did not obtain credit in response to the material. A response
> to [the mailer] is not a prerequisite for class membership.

(*Id.*) Murray further requests that the Court appoint him as class representative and the law firm of Edelman, Combs, Latturner & Goodwin, LLC ("Edelman & Combs") as class counsel. (*Id.*)

## MOTION FOR CLASS CERTIFICATION

### I. Legal Standard

Class certification is proper when the proposed class meets all the prerequisites of Federal Rule of Civil Procedure 23(a) and one of the requirements of Rule 23(b)(3). *Payton v. County of Kane*, 308 F.3d 673, 680 (7th Cir. 2002). Rule 23(a) contains four prerequisites for class certification: (1) the class must be so numerous that joinder of all members is impractical; (2) there must be questions of law and fact common to the class ; (3) the class representative's claims and defenses must be typical of the class; and (4) the representative parties must fairly and adequately protect the class's interests. Fed. R. Civ. P. 23(a); *Williams v. Chartwell Fin. Servs., Ltd.*, 204 F.3d 748, 760 (7th Cir. 2006). These prerequisites are commonly referred to as numerosity, commonality, typicality, and adequacy, respectively. In addition to the four Rule 23(a) prerequisites, a proposed class must meet one of the three requirements of Rule 23(b). This case falls under Rule 23(b)(3), which allows class certification when the common questions of law and fact among the class members predominate over issues affecting individual members, and a class action is superior to other available methods of litigation. Fed. R. Civ. P. 23(b); *Williams*, 204 F.3d at 769. A plaintiff seeking class certification bears the burden of demonstrating that the requirements of Rule 23 are met. *Murray v. New Cingular Wireless Servs.*, 232 F.R.D. 295, 299 (N.D. Ill. 2005).

The Court has broad discretion to determine whether a proposed class meets the Rule 23

certification requirements. *See Uhl v. Thoroughbred Tech. & Telecomms., Inc.*, 309 F.3d 978, 985 (7th Cir. 2002). In making this determination, Rule 23(a) should be liberally construed to support its policy of favoring the maintenance of class actions. *King v. Kansas City S. Indus., Inc.*, 519 F.2d 20, 25-26 (7th Cir. 1975). After certifying a class, the Court retains broad power to modify the definition of the class if it believes that the class definition is inadequate. *Buycks-Roberson v. Citibank Fed. Sav. Bank*, 162 F.R.D. 322, 328-29 (N.D. Ill. 1995).

## II. Analysis

Murray argues that the proposed class meets each of the four Rule 23(a) prerequisites and requests that the Court grant certification pursuant to Rule 23(b)(3). (R. 61, Pl.'s Mem. at 5-11) Although E*Trade refutes only the adequacy of Murray as class representative, the Court must consider whether Murray meets each requirement. *Valley Drug Co. v. Geneva Pharms., Inc.*, 350 F.3d 1181, 1188 (11th Cir. 2003) (holding that even if a defendant in a proposed class action does not seriously contest whether the Rule 23 requirements have been met, "a court nevertheless has the responsibility of conducting its own inquiry as to whether the requirements of Rule 23 have been satisfied in a particular case"); *see also New Cingular Wireless Servs.*, 232 F.R.D. at 298 (considering each Rule 23 requirement although the defendant did not challenge them all).

### A. Numerosity

As a prerequisite to class certification, Rule 23(a)(1) requires that the number of class members be "so numerous that joinder of all members is impracticable." Courts consider the class size, the geographic dispersion of the class members, the type of relief sought, and the practicability of relitigating the common core issue, when determining whether joinder would be practicable. *Radmanovich v. Combined Ins. Co. of Am.*, 216 F.R.D. 424, 431 (N.D. Ill. 2003). As few as forty class members may meet the numerosity requirement, particularly when they are

"widely scattered and their holdings are generally too small to warrant undertaking individual actions." *Swanson v. Am. Consumer Indus., Inc.*, 415 F.2d 1326, 1333 (7th Cir. 1969), *cited in Murray v. Sunrise Chevrolet, Inc.*, No. 04 C 7668, 2006 U.S. Dist. Lexis 19626, at *4 (N.D. Ill. Mar. 30, 2006); *Steinbrecher v. Oswego Police Officer Dickey*, 138 F. Supp. 2d 1103, 1106 (N.D. Ill. 2001) (same). It is not necessary that a class plaintiff provide an exact number of class members; instead, a reasonable estimate is sufficient—however, the estimate may not be based on pure speculation. *Dhamer v. Bristol-Myers Squibb Co.*, 183 F.R.D. 520, 525 (N.D. Ill. 1998) (citing *Marcial v. Coronet Ins. Co.*, 880 F.2d 954, 957 (7th Cir. 1989)). The Court may rely on common sense to determine whether an estimate of class size is reasonable. *See Ringswald v. County of DuPage*, 196 F.R.D. 509, 511-512 (N.D. Ill. 2000). Murray argues that his claim meets the numerosity requirement because it is reasonable to assume that E*Trade sent at least forty mailers to Illinois residents (R. 61, Pl.'s Mem. at 6.), and in his complaint he alleges that over 200 Illinois residents received the mailers. (R. 29, Am. Compl. ¶ R. 19.) E*Trade does not refute Murray's assertion that the class meets the numerosity requirement. (R. 71, Defs.' Mem.)

The Court finds that Murray has made a sufficient showing that joinder is impracticable under Rule 23(a)(1). First, although Murray provides no specific evidence to back up his estimate that at least 200 Illinois residents received the mailer, the content of the mailer indicates it is a bulk mailing. Other than Murray's name and address for mailing purposes, the mailer contains no specific reference to Murray. Thus, Murray's estimate that at least 200 people in Illinois received an identical mailer is reasonable. Second, the recipients of the mailer are likely dispersed throughout the state—they are loosely linked by the mere fact that they received the mailers. Third, the relatively small possible recovery per class member—set at a maximum of $1,000 by statute—makes it unreasonable for class members to bring this litigation

5

independently. *See* 15 U.S.C. § 1681n(a)(1); *New Cingular Wireless Servs.*, 232 at 304. Fourth, the class members' claims revolve around a common core issue of whether the mailer constitutes a firm offer of credit, which is most practicably decided in a single suit. *See Murray v. GMAC Mortgage*, 434 F.3d 948, 955-56 (7th Cir. 2006). Therefore, the Court concludes that Murray has met the numerosity requirement.

### B. Commonality

A proposed class meets the commonality requirement when the member's claims share a common nucleus of operative fact. *Owner-Operator Indep. Drivers Ass'n, Inc. v. Allied Van Lines, Inc.*, 231 F.R.D. 280, 282 (N.D. Ill. 2005) (citing *Rosario v. Livaditis*, 963 F.2d 1013, 1018 (7th Cir. 1992)). Murray argues that a common nucleus of operative fact exists because all of the proposed class's claims hinge on a single core issue—whether the mailer comprises a firm offer of credit pursuant to the FCRA. (R. 61, Pl.'s Mem. at 6-7.); *GMAC Mortgage*, 434 F.3d at 955-56. E*Trade does not point out any individual issues that might require separate litigation in its opposition to Murray's motion. (R. 71, Defs.' Mem.) Further, several courts in this district have found that similar claims brought under the FCRA meet the commonality requirement. *E.g., Murray v. Indymac Bank, F.S.B.*, No. 04 C 7669, 2006 U.S. Dist. Lexis 54513, at *4-5 (N.D. Ill. Aug. 7, 2006); *Cavin v. Home Loan Ctr., Inc.*, 236 F.R.D. 387, 391-92 (N.D. Ill. 2006); *Sunrise Chevrolet, Inc.*, 2006 U.S. Dist. Lexis 19626, at *4-6; *Murray v. Cingular Wireless II, LLC*, No. 05 C 1334, 2005 U.S. Dist. Lexis 39542, at *4-5 (N.D. Ill. Dec. 22, 2005); *New Cingular Wireless Servs.*, 232 F.R.D. at 299. Accordingly, the Court agrees with Murray's characterization and finds that he has met the commonality prerequisite.

### C. Typicality

An evaluation of typicality under Rule 23(a)(3) requires that the Court consider whether

the class representative's claim is typical of those of the class. In order to meet this requirement, the class representative must be a member of the proposed class. *Cavin*, 236 F.R.D. at 392 (citing *Sosna v. Iowa*, 419 U.S. 393, 403 (1975)). Further, the class representative's claim must "'arise[ ] from the same event or practice or course of conduct that gives rise to the claims of other class members and [be] based on the same legal theory.'" *Owner-Operator Indep. Drivers*, 231 F.R.D. at 282 (quoting *De La Fuente v. Stokely-Van Camp, Inc.*, 713 F.2d 225, 232 (7th Cir. 1983)). Courts have frequently found that persons who received documents similar to E*Trade's mailer and sue for violations of the FCRA meet the typicality prerequisite. *E.g., Indymac Bank, F.S.B.*, 2006 U.S. Dist. Lexis 54513, at *5-6; *Cavin*, 236 F.R.D. at 392; *Sunrise Chevrolet, Inc.*, 2006 U.S. Dist. Lexis 19626, at *6-7; *Cingular Wireless II, LLC*, 2005 U.S. Dist. Lexis 39542, at *5-6; *New Cingular Wireless Servs.*, 232 F.R.D. at 299.

Like the other members of the proposed class, Murray is a resident of Illinois who received the mailer during the applicable time period. (R. 29, Am. Compl. ¶¶ 4, 7.) Murray's claim arises from the same conduct as the other proposed class members, the receipt of the E*Trade mailer, and his claim is based on the same legal theory, a violation of the FCRA's prohibition against using consumer reports except for certain permissible purposes. Therefore, Murray meets the typicality requirement for class certification.

### D. Adequacy

Rule 23(a)(4) requires that "the representative parties will fairly and adequately protect the interest of the class." The Court must consider both the adequacy of the proposed class counsel and the adequacy of the proposed class representative. *Amchem Prods., Inc. v. Windsor*, 521 U.S. 591, 626 n.20 (1997) (noting that adequacy is determined by examining both the class representative and class counsel); *Sec'y of Labor v. Fitzsimmons*, 805 F.2d 682, 697 (7th Cir.

1986); *Cavin*, 236 F.R.D. at 393. In order to meet the adequacy prerequisite, both class counsel and also the class representative must not have interests that conflict with the interests of the absent class members. *Amchem Prods., Inc.*, 521 U.S. at 626 & n.20. Class counsel must be experienced, competent, qualified, and able to conduct the litigation vigorously. *Cavin*, 236 F.R.D. at 393 (citing *Fitzsimmons*, 805 F.2d at 697). The class representative must be sufficiently interested in the outcome of the case to ensure vigorous advocacy. *Id.* at 392-93.

The Court begins by examining the adequacy of Edelman & Combs as class counsel. Murray contends that the legal qualifications of Edelman & Combs's attorneys, Edelman & Combs's resources, and its prior experience with similar cases, such as *Cole v. U.S. Capital, Inc.*, 389 F.3d 719 (7th Cir. 2004), make Edelman & Combs well qualified to represent the class. (R. 59, Pl.'s Mot. ¶ 12; *id.*, Ex. A; R. 61, Pl.'s Mem. at 8-9.) Murray also asserts that Edelman & Combs's interests do not conflict with the interests of the class, making the law firm adequate class counsel. (R. 61, Pl.'s Mem. at 9.) E*Trade does not challenge the adequacy of Edelman & Combs and even praises Edelman & Combs's attorneys' experience. (R. 71, Defs.' Mem. at 10 n.1.) Further, the fact that several courts have previously found Edelman & Combs adequate in similar suits, *e.g.*, *Cavin*, 236 F.R.D. at 394, *New Cingular Wireless Servs.*, 232 F.R.D. at 301, is persuasive evidence that the firm will adequately represent the class. The Court agrees with Murray that Edelman & Combs is qualified to serve as class counsel and that the firm's interests do not conflict with the class's interests.

The sole argument that E*Trade makes in opposition to Murray's motion for class certification relates to the second half of the adequacy inquiry, Murray's adequacy as class representative. (R. 71, Defs.' Mem. at 1-12.) As previously noted, Rule 23(a)(4) requires that a class representative be "sufficiently interested in the outcome to ensure vigorous advocacy."

8

*Cavin*, 236 F.R.D. at 394. This does not require that the class representative control the litigation because "[r]ealistically, functionally, practically" class counsel "direct[s] and manage[s]" the suit. *Culver v. City of Milwaukee*, 277 F.3d 908, 913 (7th Cir. 2002). Thus, the adequacy requirement places only a "modest" burden on a class representative to demonstrate "[a]n understanding of the basic facts underlying the claims, some general knowledge, and a willingness and ability to participate in discovery." *Cavin*, 236 F.R.D. at 394 (quotation marks and citation omitted); *see also Rand v. Monsanto Co.*, 926 F.2d 596, 599 (7th Cir. 1991) (requiring only that "the named plaintiff must have *some* commitment to the case, so that the 'representative' in a class action is not a fictive concept") (emphasis in original); *New Cingular Wireless Servs.*, 232 F.R.D. at 300 (describing the burden on the class representative as "not difficult."). E*Trade attacks Murray's adequacy on grounds that he is merely a "figurehead" who is not sufficiently involved in the litigation and lacks an understanding of the suit. (R. 71, Defs.' Mem. at 5-12.)

The Court begins its inquiry as to whether Murray is an adequate class representative by examining whether Murray has demonstrated a willingness to participate in the litigation. E*Trade argues that because Murray did not make the decision to seek certification of an Illinois-based class, he lacks sufficient interest in the litigation. (*Id.* at 6-8.) Contrary to E*Trade's argument, based on Murray's deposition testimony, the Court finds that Murray reviewed the motion for class certification (*see* R. 75-2, Murray Dep. Tr. at 107:20-108:23) and properly relied on counsel's judgment to limit the class to Illinois residents. *See Culver*, 277 F.3d at 913. Further, careful review of Murray's deposition testimony reveals that Murray exhibited willingness and an ability to take part in the litigation by reviewing and authorizing discovery documents (R. 75-2, Murray Dep. Tr. at 67:24-68:3), the complaint (*id.* at 70:6-71:19, 101:6-

9

103:7), amendments to the complaint (*id.* at 107:1-108:1), the proposed settlement offer (*id.* at 79:4-79:18), and the motion for class certification (*id.* at 108:2-108:23). Murray also read E*Trade's motion to dismiss and the court's subsequent ruling (*id.* at 152:20-153:12), and prepared with his attorney for his deposition (*id.* at 135:21-137:22). Although Murray did not always understand or remember everything he reviewed (*e.g.*, *id.* at 152:20-153:20) or look forward to his duties as class representative (*id.* at 74:2-75:10), the record demonstrates that he has taken an active role in the litigation. *See New Cingular Wireless Servs.*, 232 F.R.D. at 300 (rejecting an argument that a class representative was inadequate because he could not show that he "recall[ed] the terms of a settlement for a case he was previously involved in, or that he was aware that his attorneys had filed certain motions in the current case"). Based on the foregoing, the Court finds that Murray's involvement in the litigation weighs in favor of finding him an adequate class representative.

E*Trade also argues that Murray lacks sufficient understanding of the issues involved in his FCRA suit. A class representative, however, is not required to understand the intricacies of the suit. *See Margolis v. Caterpillar, Inc.*, 815 F. Supp. 1150, 1154 (C.D. Ill. 1991); *New Cingular Wireless Servs.*, 232 F.R.D. at 300 (holding that a class representative's ignorance of the case is not a bar to certification unless it impairs the representative's ability to vigorously prosecute the action); *Cavin*, 236 F.R.D. at 394 (same). It is enough that the representative understands the general nature of the litigation and is committed to the prosecution of the action. *See Cavin*, 236 F.R.D. at 394. When asked about his suit Murray said, "It's in regards to the Federal Credit Act as far as them violating it, going into my credit report and my information without my authorization and offering me services that they can't guarantee." (R. 75-2, Murray Dep. Tr. 6:14-6:18; *accord id.* 88:10-91:3.) Not satisfied with this response, counsel for E*Trade

later asked Murray to respond to numerous legal questions about the FCRA, even asking that Murray define a "firm offer of credit" under the FCRA (*id.* at 91:21-100:11)—a term that has evaded a precise definition in even the Seventh Circuit's recent decisions. *See, e.g., Perry v. First Nat'l Bank*, 459 F.3d 816, 823-26 (7th Cir. 2006); *Cole*, 389 F.3d 719, 724-28 (7th Cir. 2004). Despite the difficulty of this task, Murray provided a plausible interpretation of a "firm offer of credit" by stating that it "is when they offer me a specific amount at a certain rate." (R. 75-2, Murray Dep. Tr. 92:4-6.) Murray's erroneous belief that a company is never justified in accessing a consumer report (*id.* at 99:19-99:24) will, if anything, ensure that he will vigorously pursue the class action. We are persuaded by Murray's deposition testimony that Murray possesses a sufficient understanding of the legal basis for his suit to adequately represent the class.

The Court turns next to the question of whether Murray sufficiently understands that a class representative must protect the class against an award of excessive attorney's fees. As explained above, a class representative must protect the interests of the class, placing them above his own personal interests and the interests of class counsel. *See Crawford v. Equifax Payment Servs.*, 201 F.3d 877, 880 (7th Cir. 2000) (holding that a "[a] representative plaintiff acts as fiduciary for the others" requiring the representative to act in the best interest of class). Part of his duty to protect the class requires him to ensure that class counsel does not take an excessive fee award at the expense of the class's monetary award. *See Crawford*, 201 F.3d at 882 (allowing absent class members to intervene in order to oppose a proposed settlement agreement under which class counsel received $78,000 and the absent class members received nothing); *see also Susman v. Lincoln Am. Corp.*, 561 F.2d 86, 91-96 (7th Cir. 1977) (disqualifying class representatives when their ties to class counsel might cause them to benefit from attorney's fees).

Murray stated at his deposition, however, that he has not reviewed his attorney's expenses and does not care how much they spend on the suit. (R. 75-2, Murray Depo. Tr. 66:15-67:8.) Murray believes that the suit is about "keeping [his] life private" and stated that he "could care less about becoming rich off of [the suit]." (*Id.* 135:4-135:11.)

Although the Court does not condone of Murray's cavalier attitude about attorney's fees, there is no need to deny class certification on this ground. While Murray appears disinterested in attorney's fees, he understands that he must put the interests of the class before his own and is willing to do so. (R. 75-2, Murray Dep. Tr. 54:18-55:17.) Based on Murray's deposition testimony, the Court believes that if apprised of his duty to protect against excessive attorney's fees, Murray will protect the class's interest. Moreover, even if Murray does not understand the importance of protecting the class's monetary award, this Court can prevent the parties from reaching a resolution that subverts the interests of the class members to those of class counsel. *See* Fed. R. Civ. P. 23(e), (h); *Carnegie v. Household Int'l, Inc.*, 445 F. Supp. 2d 1032, 1038 (N.D. Ill. 2006) (reviewing reasonableness of attorney's fees). Further, the Court finds unpersuasive the cases that E*Trade cites for the proposition that certification should be denied because of Murray's stated lack of interest in attorney's fees. In all three of the Texas district court decisions cited by E*Trade, the proposed class representative's lack of understanding of attorney's fees was just one of many factors that contributed to the courts' finding that the representative was not adequate. *E.g., Ogden v. AmeriCredit Corp.*, 225 F.R.D. 529, 535-37 (N.D. Tex. 2005) (finding proposed representative inadequate who lacked understanding of the case, did not monitor attorneys, and failed to appear at a scheduled hearing); *Umstead v. Intelect Commc'ns, Inc.*, No. 3:99-CV-2604, 2003 WL 79750, at *2-3 (N.D. Tex. Jan. 7, 2003) (listing the proposed representatives' lack of knowledge of costs and fees as just one of several

deficiencies that rendered the representatives inadequate); *Griffin v. GK Intelligent Sys., Inc.*, 196 F.R.D. 298, 301-02 (S.D. Tex. 2000) (ruling that proposed representatives were inadequate due to lack of participation in the litigation, failure to receive cost and expense information, and their lack of knowledge about the suit). In contrast to these cases, Murray has demonstrated ample participation and knowledge of the litigation. Based on the foregoing, the Court sees no reason to deny class certification solely because of Murray's statements at his deposition regarding attorney's fees.

E*Trade also insinuates that Murray is not an adequate representative because he and his family have filed numerous suits alleging violations of the FCRA. (R. 71, Defs.' Mem. at 3.) Murray served as class representative in a previous case and his immediate family members are involved in numerous suits. (R. 71, Defs.'s Mem., Ex. 1.) Nonetheless, contrary to the defendants' argument, Murray's status as a repeat litigant actually makes him more capable as a class representative. *See GMAC Mortgage*, 434 F.3d at 954 ("Repeat litigants may be better able to monitor the conduct of counsel, who as a practical matter are the class's real champions.").

Accordingly, Murray has demonstrated adequate participation and understanding of the litigation such that the Court finds he will vigorously advocate on behalf of the class. Accordingly, he has met the Rule 23(a)(4) adequacy prerequisite.

### E. Rule 23(b)(3)

Murray requests certification under Rule 23(b)(3), which provides that a class action is appropriate when "questions of law or fact common to the members of the class predominate over any questions affecting only individual members, and . . . a class action is superior to other available methods for the fair and efficient adjudication of the controversy." Fed. R. Civ. P. 23(b)(3). The parties agree that the suit hinges on whether the mailer constitutes a firm offer of

credit (R. 71, Defs.' Mem. at 11; R. 61, Pl.'s Mem. at 1-2.). This question is common to all class members and predominates over any other issue in the suit. Further, a class action appears to be superior to other forms of litigation given the large number of potential class members and the relatively small amount of their possible individual recoveries. *See GMAC Mortgage*, 434 F.3d at 953 (stating in a similar FCRA suit that "Rule 23(b)(3) was designed for situations such as this"). Indeed, several courts have found similar consumer suits appropriate for certification pursuant to Rule 23(b)(3). *Cavin*, 236 F.R.D. at 396; *See Longo v. Law Offices of Gerald E. Moore & Assocs., P.C.*, No. 04 C 5759, 2006 U.S. Dist. Lexis 19624, at *17-18 (N.D. Ill. Mar. 30, 2006); *New Cingular Wireless*, 232 F.R.D. at 305. Similarly, Rule 23(b)(3) certification is appropriate in this case.

Murray has met all four of the Rule 23(a) prerequisites for class certification and demonstrated that certification is appropriate pursuant to Rule 23(b)(3). Accordingly, the Court grants Murray's motion to certify the class as defined above.

## REQUEST TO STAY THE MAILING OF NOTICE

E*Trade requests that the Court stay the mailing of notice to class members until after the resolution of a motion for summary judgment that E*Trade intends to file shortly. (R. 71, Defs.' Mem. at 13.) Rule 23(c)(2)(B) makes "the best notice practicable under the circumstances" mandatory once a class is certified pursuant to Rule 23(b)(3). Notice is not required until after a class is certified, *see* Fed. R. Civ. P. 23(c)(2)(B), and courts are permitted to resolve a motion for summary judgment before a motion for class certification. *Cowen v. Bank United of Tex., FSB*, 70 F.3d 937, 941-42 (7th Cir. 1995). It follows that the Court may decide a motion for summary judgment before requiring the parties to mail notice to absent class members. However, when notice is not sent to a Rule 23(b)(3) class until after the resolution of a motion for summary

14

judgment, the party moving for summary judgment risks that the resulting order may not be binding on the absent class members. *See Jefferson v. Ingersoll Int'l Inc.*, 195 F.3d 894, 896-97 (7th Cir. 1999); *Cowen*, 70 F.3d at 941-42; *Talley*, 2:06-CV-48-PPS-PRC, 2006 U.S. Dist. Lexis 74419, at *3-7.

E*Trade asks that the Court stay the mailing of notice to absent class members because it believes it will prevail on summary judgment and mailing notice would thus needlessly injure E*Trade's reputation and good will. (R. 71, Defs.' Mem. at 13.) E*Trade acknowledges that staying the mailing of notice will result in its claim having no preclusive effect on absent class members. (*Id.*) Murray does not oppose E*Trade's request for a stay. (R. 75, Pl.'s Reply.) In light of E*Trade's willingness to forego the possibility of a binding judgment on absent class members and Murray's lack of opposition, the Court grants E*Trade's request to stay the mailing of notice to absent class members pending the resolution of E*Trade's motion for summary judgment.

## CONCLUSION

For the foregoing reasons, the Court grants Murray's motion to certify a class and appoints Murray as class representative and Edelman & Combs as class counsel. The Court further grants E*Trade's request to stay the mailing of notice to absent class members pending the resolution of E*Trade's motion for summary judgment.

ENTERED *[signature]*

**Judge Ruben Castillo**
**United States District Court**

**DATED:** November 20, 2006